UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

vs.   CRIMINAL NO. 3:19-CR-308 (VAB)

JENNIFER O'BRIEN   February 8, 2021

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The defendant, Jennifer O'Brien, submits this memorandum in aid of sentencing, which is scheduled for Tuesday, February 16. Mrs. O'Brien has pled guilty to three misdemeanor counts for willful failure to file a tax return and has thereby accepted responsibility for the conduct that brings her before this Court. Mrs. O'Brien respectfully submits that her personal history and circumstances, particularly her numerous medical issues, warrant a non-incarceration sentence.

**I.   FACTUAL BACKGROUND**

When friends are asked to describe Jennifer O'Brien, they use words like "kind" and "loving." *See* **Exhibit B**, Letters of Support. They remark on her long struggles with her health, marked by persistent pain and frequent trips to a variety of doctors. Yet, they also remark on her positive outlook, her commitment to her work and church community, and her support to those around her. Mrs. O'Brien has reflected on the conduct that brings her before the Court, and sees how she was seeking ways to fill the hole left by the passing of her father, the loss of her mother's health following her stroke, and the loss of her own health as her own conditions deteriorated. *See* **Exhibit A**, Letter from Jennifer O'Brien.

In many ways, Mrs. O'Brien's adult life has been defined by her persistent medical issues and her complicated family. It is clear that she was very close to her father, particularly since he often acted as an intermediary between her and her mother when her mother was difficult to manage. *See*

PSR at ¶ 32.  In 2007, her mother had a stroke.  Incidentally, that was the same year that Mrs. O'Brien was diagnosed with a rare muscle disease, dermatomyositis,[1] which resembles muscular dystrophy, and in the years that followed her condition continued to deteriorate.  In 2010, her father was diagnosed with melanoma, and unexpectedly passed away from his condition in September 2012.  Mrs. O'Brien was deeply affected by the loss of her father.  Her father had always handled her mother's finances, and suddenly the obligation fell to her to take care of her mother physically and financially.

After Mrs. O'Brien's father passed away in 2012, Ms. O'Brien assumed power of attorney for her mother.  Her father had created a trust for Mrs. O'Brien's mother, and Mrs. O'Brien and her brother were the residual beneficiaries.  Her mother relocated from Pennsylvania to Connecticut to live with Mrs. O'Brien, and Ms. O'Brien used the money in the trust to make improvements to her home to accommodate her mother's needs.  Yet, she also used funds from the trust to purchase items for herself and for her children.  As a result, she received income from the trust that she did not include in her tax returns for the years 2012 through 2014. At the time, she was struggling physically and emotionally.  Her dermatomyositis had grown worse, and she was experiencing extreme fatigue,

---

[1] The National Institute of Health characterizes dermatomyositis as a rare disease defined as "an autoimmune condition that causes skin changes and muscle weakness. Symptoms can include a red skin rash around the eyelids, red bumps around the joints, and muscle weakness in the arms and legs. Dermatomyositis is most common in adults between ages 40 and 60, or in children between ages 5 and 15. Muscle weakness gets worse over time and can lead to stiff joints and muscle wasting. The cause for dermatomyositis is unknown. Diagnosis is made through a clinical exam and microscopic examination of a piece of skin and muscle. Treatment is focused on managing the symptoms. Options include different medications, physical therapy, and exercise." https://rarediseases.info.nih.gov/diseases/6263/dermatomyositis#:~:text=Dermatomyositis%20is%20an%20autoimmune%20condition,between%20ages%205%20and%2015 (last accessed Feb. 8, 2021).

muscle weakness and would periodically require the assistance of crutches or a cane to ambulate. She had a large melanoma removed from her thigh that year, and even on the day her father died, she was in surgery to repair an injury from a car accident. She was also in a difficult and strained marriage. *See* PSR at ¶ 36. As she made adjustments to her life and her home to allow her mother to move in, she convinced herself that her father would have wanted her to take care of herself as well. She started using the funds not only to provide for her mother, but also to cover her own expenses, some of which were elaborate.

She now appreciates that there is no justification for using more money than that to which she was entitled for the care of her mother, and she has properly accepted responsibility. A civil action concerning her role as trustee was filed in Pennsylvania, where she resides, and she entered a stipulation that will require her to repay the money owed to her mother's trust by, in part, relinquishing her inheritance. She has also pled guilty to the related misdemeanor tax offenses in this Court because she failed to include the income derived from the trust when she filed her tax returns. Mrs. O'Brien has led a life complicated by myriad medical issues and emotional issues, but she has lived a life without any involvement in the criminal justice system. She now has a criminal record for the first time in her life, and she has had to reckon with the disappointment she caused her family, most notably her mother. Today, Mrs. O'Brien has no involvement whatsoever with her mother's finances, but she remains engaged with her and they have a strong relationship. Mrs. O'Brien maintains regular contact with her mother, and is singularly focused on providing love and support as her mother's health deteriorates.

## II. A NON-INCARCERATION SENTENCE IS REASONABLE AND APPROPRIATE THROUGH DOWNWARD DEPARTURES OR THROUGH A VARIANCE BASED ON THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a).

United States Sentencing Guideline § 1B1.1 establishes a three step process for arriving at a reasonable sentence that includes (1) establishing the appropriate guideline range, (2) determining if there are any departures warranted based on the existence of extraordinary factors "of a kind" or "to a degree" that were not adequately considered by the guidelines, and (3) assessing whether a non-guidelines sentence of "variance" from the guidelines is warranted based on the factors set forth by 18 U.S.C. § 3553(a).

### A. The Applicable Guideline Range

Mrs. O'Brien pled guilty to three counts of misdemeanor willful failure to file tax returns in violation of 26 U.S.C. § 7203. The parties agree that Mrs. O'Brien's base offense level under U.S.S.G. § 2T1.1(a)(1) and 2T4.1(F) is 16. Two levels are added under U.S.S.G. § 3B1.3 because Mrs. O'Brien abused a position of private trust, and two levels are added under U.S.S.G. § 3A1.1(b)(1) because she should have known the victim was vulnerable. This is Mrs. O'Brien's first contact with the criminal justice system, so with zero criminal history points, she falls into a Criminal History Category I. After acceptance, a total offense level of 17 yields a guideline range of 24 to 30 months. Since each count is a misdemeanor, the statutorily applicable guideline range for each count is 12 months. *See* PSR at ¶ 54.

There are a number of factors present in this case that "combine to create a situation that 'differs significantly from the heartland cases covered by the guidelines'." *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996). Whether taken individually or in combination, the proposed departures below highlight why a non-incarceration sentence is appropriate in this case.

4

**B. Mrs. O'Brien's Age and Physical Condition Warrant A Non-Incarceration Sentence, Particularly Given Her Myriad Health Conditions and the Risks Posed By The Covid-19 Pandemic.**

The guidelines contemplate that both advanced age and poor physical health are factors that the Court may consider in determining its sentence. *See* USSG § 5H1.1 (age "may be relevant in determining whether a departure is warranted, if conditions based on age, individually, or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."); USSG § 5H1.4 ("physical condition or appearance, including physique," may be pertinent to the Court's determination of whether a departure is warranted). Mrs. O'Brien's medical history, coupled with her age, warrants a departure or a variance, particularly given the risks posed to her by the COVID-19 pandemic.

Mrs. O'Brien is 53 years old, but her medical conditions make her feel much older. She has a gastric pacemaker due to the dermatomyositis, and at one point her condition required that she have a feeding tube for several years because her stomach was paralyzed from the condition. Correspondence from Mrs. O'Brien's primary care physician documents 24 active ailments, including the following:

- Dermatomyositis (HCC)
- Benign essential HTN (hypertension)
- Dysautonomia[2]

---

[2] Dysautonomia is a general term for conditions caused by problems with the automatic nervous system, which can lead to heart and blood pressure problems, trouble breathing, and loss of bladder control. https://my.clevelandclinic.org/health/diseases/6004-dysautonomia (last accessed Feb. 8, 2021).

5

- Glaucoma of both eyes

- History of malignant melanoma

- History of pericarditis

- Long term/current use of systemic steroids

*See* **Exhibit C**, Letter from Dr. Swain (filed under seal).[3] As Dr. Swain notes, Mrs. O'Brien's use of a gastric pacer requires care from a specialist and she is on several medications that have the effect of lowering her immune system response, thereby placing her at "higher risk of infection and certainly at high risk of complications from COVID-19 should she contract this." *Id.* Unfortunately for Mrs. O'Brien, these health conditions require ongoing appointments and tests involving a number of specialists. Indeed, Mrs. O'Brien recently had an endoscopy, and she has another nine specialist appointments scheduled between now and August that include regular appointments for Rutiuxan infusions, a chemotherapy drug she receives as treatment for her dermatomyositis.[4]

The Bureau of Prisons acknowledges its struggle to accommodate the needs of "aging inmates," which is defined as anyone over the age of 50. *Id.* at 1. The BOP recognizes that it lacks sufficient staff and resources to account for an aging population and the physical infrastructure of the BOP cannot adequately accommodate aging inmates. *Id.* Mrs. O'Brien has ongoing medical needs that

---

[3] Dr. Swain's letter references an attached medication list but it appears to have been inadvertently omitted from the correspondence. Instead, Mrs. O'Brien provided counsel with a copy of her current medication list, which is filed under seal as **Exhibit D**.

[4] Mrs. O'Brien generated the list of appointments at undersigned counsel's request. The list of appointments is filed under seal as **Exhibit E**. Mrs. O'Brien has also provided a list of tests that she has had to undergo in the past two years, which demonstrates the frequency with which medical visits are required. *See* **Exhibit F** (under seal).

6

have the potential to only increase over time, as they have during the pendency of this case. To incarcerate her during this pandemic, when the health services at the Bureau of Prisons is even more strained than in normal times, could put her at significant risk and constitute unduly harsh punishment.[5]

      **C.**    **Mrs. O'Brien's Zero Criminal History Points Demonstrate her Likelihood of Recidivism is Extremely Low.**

"Minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *United States v. Germosen*, 473 F.Supp.2d 221, 227 (D. Mass. Jan. 18, 2007) (Gertner, J.). (citing United States Sentencing Commission, *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, 15 (Jan. 4, 2005).[6] The United States Sentencing Commission has conducted statistical analyses to assess the recidivism rates of defendants based on numerous criteria, including but not limited to criminal history points, over an extended period. The most recent iteration of the Commission's research was released in March of 2017. *The Past Predicts the Future: Criminal*

---

[5] Mrs. O'Brien submits as an additional grounds for departure that this Court may depart from the recommended guideline range to account for risks of incarceration during a pandemic, as the inherent risks to someone like Mrs. O'Brien during the COVID-19 health crisis were not contemplated by the Sentencing Guidelines. *See* U.S.S.G. § 5K2.0(a)(1) (a Court may depart from the guidelines if it concludes that there is a "mitigating circumstance. . . of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.").

[6] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf.

7

*History and Recidivism of Federal Offenders* (March 2017).[7] The Commission's findings point to the conclusion that Mrs. O'Brien is highly unlikely to recidivate. This empirical evidence, set forth below, suggests that the punishment prescribed by the guidelines based on a Criminal History category of I may consequently be overstated in this case and a sentence within that range may not be consistent with the statutory mandate that the sentence imposed be sufficient but not greater than necessary to meet the goals of a criminal sentence. See 18 U.S.C. § 3553(a). Specifically, Criminal History category I, which accounts for those with both 0 and 1 criminal history points, covers individuals with statistically disparate levels of likely recidivism. Individuals with zero criminal history points subsequently are rearrested in 30.2% of cases, while those with one point are rearrested over 50% more often, at 46%. The re-arrest rate for those with no prior criminal justice contact is even lower, at 25.7%. Along other dimensions considered by the Commission, Mrs. O'Brien also poses a low risk of recidivism. The commission, for example, found that women recidivate at a rate far lower than men (36.4% vs 52.2%).[8]

Even without considering her personal character and circumstances, designation of Mrs. O'Brien simply as falling into Criminal History category I elides this important distinction between

---

[7] Available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf

[8] The newest edition of the United States Sentencing Guidelines, which went into effect on November 1, 2018, has incorporated these findings into the provisions governing alternatives to incarceration for nonviolent first offenders. In particular, U.S.S.G. § 5C1.1 now urges a Court to "consider imposing a sentence other than a sentence of imprisonment" for a "nonviolent first offender" under certain circumstances.

people, like her, with no previous criminal history, and those with modest criminal history. The sentence in this case should reflect that statistical reality, even though the Guidelines do not.

Her likelihood of recidivism is even lower on account of her age. Mrs. O'Brien is 53 years old. As one Court noted in a comparable case involving an older defendant, "[i]t is highly unlikely that [the defendant] will repeat his criminal conduct given that he is sixty-five year[s] old and previously had no criminal history points." *United States v. Greene*, 249 F.Supp.2d 262, 267 (S.D.N.Y. 2003). In *Greene*, age was one of the factors that warranted a non-custodial sentence. *Id.*

### D. The Factors Contemplated By 18 U.S.C. § 3553(a) Weigh in Favor Of a Non-Incarceration Sentence

The conduct that brings Mrs. O'Brien before this Court is not truly reflective of who she is as a person. The letters provided to the Court reveal a woman who has preserved through illness and personal struggles, while remaining committed to her work, her community and her family. Her friends and family reference her health issues in their letters to the Court because they have been a defining aspect of her life, but she has done her best to stay positive despite numerous health conditions. She does not use her circumstances as an excuse for her misconduct, but instead acknowledges it to try to understand why she engaged in the criminal conduct that is being weighed at sentencing.

Mrs. O'Brien is filled with regret. She has disappointed her family and, most importantly, she failed to properly manage her mother's finances. She has accepted responsibility for her conduct both here and in a civil action in Pennsylvania, and has relinquished her share in any of her mother's estate to help account for the funds that were improperly used. Her primary focus now is to make the most of the years that her mother has on this earth. Her mother's health is failing, and Mrs. O'Brien seeks to maximize the opportunities that remain for her to spend time with her mother.

It is clear that Mrs. O'Brien's health, failing marriage and attendant depression were significant contributing factors to her offense. Now, however, she is in a happy marriage with a man she loves deeply. She has three daughters who need her care and attention. She has a mother who is infirm and who needs her ongoing emotional support. And she has her own health issues to attend to, which present an ever changing set of challenges.

Mrs. O'Brien has never encountered the criminal justice system before, and the remorse she feels for her misconduct will ensure she never reoffends. There is no question that Mrs. O'Brien is deterred from future misconduct.

## **CONCLUSION**

A fundamental principle of sentencing is that a court "shall impose a sentence sufficient, but not greater than necessary" to meet the goals of sentencing. 18 U.S.C. § 3553(a). Mrs. O'Brien's background, history and characteristics, when viewed relative to the nature of the offense, support a non-incarceration sentence. Such a sentence is just, provides sufficient deterrence, and accounts for the criminal conduct that has brought Mrs. O'Brien before this Court.

Respectfully submitted,

THE DEFENDANT,
Jennifer O'Brien

OFFICE OF THE FEDERAL DEFENDER

Dated: February 8, 2021

 */s/ Allison M. Near*
Allison M. Near
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar No.: ct27241
Email: allison_near@fd.org

10

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on February 8, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                      /s/ Allison M. Near
                                      Allison M. Near