UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:19CR308(VAB) |
| v. | : | |
| JENNIFER O'BRIEN | : | February 12, 2021 |

### GOVERNMENT'S SENTENCING MEMORANDUM

The Government submits this memorandum in anticipation of the sentencing of Jennifer O'Brien, which is presently set to occur on February 16, 2021. The defendant embezzled/misappropriated money intended for the support and benefit of her elderly mother, and failed to file tax returns notwithstanding her receipt of significant income from such embezzlement. The defendant utilized funds for retail shopping and other expenses—to benefit herself and her three children. While the defendant—citing to numerous medical ailments—seeks a non-custodial sentence, such a sentence fails to reflect the gravity of her conduct, and does not constitute just punishment. While a variance may be appropriate in light of her medical conditions, a significant sentence of incarceration is necessary to meet the goals of sentencing to include the need to reflect the severity of the offense, the need for deterrence, and to promote respect for the law. That is particularly the case here because, in addition to causing a significant tax loss to the U.S. Treasury, the defendant also threatened her mother's financial security while she occupied a position of trust and responsibility with respect to her mother. As such, the Government submits that a sentence of 12 months is appropriate.


I. **FACTUAL BACKGROUND**

A. **Procedural History**

On December 12, 2019, the defendant waived her right to indictment and pled guilty to a three-count information charging her with willful failure to file tax returns in violation of 26 U.S.C. § 7203. *See* PSR at ¶ 1; Plea Agreement (Doc. No. 4).

B. **Defendant's Conduct**

The defendant, Jennifer O'Brien, who was previously known as Jennifer Brokaw, assumed responsibility as power of attorney for her mother, D.S., upon the death of the defendant's father in 2012. As the power of attorney, the defendant agreed, upon signing a document in September 2011, among other things, to "exercise the powers for the benefit of the principal," to "keep the assets of the principal separate from my assets," and to "exercise reasonable caution and prudence." Despite that, the defendant exercised her powers in large part for her own benefit. She also commingled assets and spent a substantial percentage of the estate in a relatively short period of time. *See* PSR at ¶ 6; Plea Agreement at 9.

In late 2012, the defendant's mother, who had previously suffered a stroke, moved from Pennsylvania to Connecticut to live with the defendant. While the defendant made certain expenditures from her mother's money for the benefit of her mother, she also spent significant amounts for other purposes. For example, she paid for retail shopping and car expenses which were not for her mother's benefit, but were instead for the benefit of the defendant and her children. The defendant admits that she misappropriated at least $510,818.70 for her own use between 2012 and 2014. *See* PSR at ¶ 7; Plea Agreement at 9.

The defendant was required to file tax returns. In 2012, she received income from the Columbia Board of Education, such that she was required to file a tax return. In addition, in each of 2012, 2013, and 2014, she had misappropriated/embezzled funds in amounts exceeding the filing threshold. For each of those years, she willfully failed to file tax returns. It should be noted that for 2012, it appears that a third party filed a fraudulent tax return in the defendant's name. When contacted by the IRS concerning that return, the defendant agreed to the proposed changes, which indicated that her wages and income were $0. In fact, she had income which she failed to declare to the IRS. For each of 2013 through 2014, she failed to report the misappropriated/embezzled funds, which constituted income to her. *See* PSR at ¶ 8; Plea Agreement at 9. As such, total tax loss for 2012, 2013, and 2014 is $139,007. *See* PSR at ¶ 9; Plea Agreement at 9.

## II.  DISCUSSION OF SENTENCING CONSIDERATIONS

### A. Statutory Maximum Sentence

The statutory maximum sentence for <u>each</u> violation of 26 U.S.C. § 7203 is imprisonment for up to 1 year, a period of supervised release of up to 1 year, a fine of up to $100,000 (*see* 18 U.S.C. § 3571(b)), and a special assessment of $25.

### B. United States Sentencing Guideline

The Government agrees with the U.S. Probation Officer's computation of the appliable Sentencing Guidelines range, which is also consistent with the Plea Agreement.

Pursuant to U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(F), the base offense level is 16 because the tax loss is between $100,000 and $250,000. *See* PSR at ¶ 14. Two levels are added pursuant to U.S.S.G. § 3A1.1(b)(1) because the defendant knew or should have known that a victim was

vulnerable, given that her mother had suffered from a stroke and required a person to serve as a power of attorney. *See* PSR at ¶ 16. While the defendant's mother is not technically a victim of the offenses of conviction, that Guidelines provision applies because "vulnerable victim" is defined to include a person who is "a victim of the offense and conviction and any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." Two levels additional are added pursuant to U.S.S.G. § 3B1.3 because the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense. Specifically, the defendant occupied a position of trust as power of attorney, a position which facilitated her misappropriation of the funds—which she then failed to report on tax returns. *See* PSR at ¶ 17. Three levels are subtracted pursuant to U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total offense level of 17. *See* PSR at ¶¶ 21, 22, 23. The defendant does not have a prior criminal history, and as such falls within Criminal History Category I. *See* PSR at ¶ 26.

With a criminal history category of I and an offense level of 17, the Guidelines range is 24 to 30 months of imprisonment, 1 year of supervised release, and a fine of between $5,500 to $50,000. *See* PSR at ¶¶ 54, 57, 62.

### C. 18 U.S.C. § 3553(a) Factors

The Government addresses below the section 3553(a) factors most salient in this case, which support a sentence of 12 months of incarceration.

1. *Nature and Circumstances of the Offense*

The defendant occupied a position of trust, and misappropriated/embezzled funds intended to be used for the care of her mother. She significantly depleted her mother's assets,

4

all while her mother was in a vulnerable position. Serving as a power of attorney and as a caretaker is not an invitation to spend funds as one's own, as the defendant recognized in agreeing to "exercise the powers for the benefit of the principal," to "keep the assets of the principal separate from my assets," and to "exercise reasonable caution and prudence." Plea Agreement at 9. Notwithstanding those acknowledgements, the defendant exercised her powers in large part for her own benefit (and for that of her children)—misappropriating over $500,000. She then failed to file tax returns recognizing and reporting this income. As such, the defendant's conduct harmed her mother's financial security and also harmed the United States in its efforts to assess and collect taxes to be used towards the running of the country, causing harm of almost $140,000. That conduct warrants a significant sentence of incarceration.

2. *History and Characteristics of the Defendant*

The defendant's conduct in this case occurred over a period of years, and reflects upon her character. The defendant essentially helped herself to funds rightfully intended for her mother's benefit. During that same time period, the defendant submitted a letter to a college attended by her daughter, in an attempt to receive financial aid. In that submission, she said concerning her mother:

> I accidentally/inadvertently put down my mother [D.S.] as a dependent. She is not a dependent on taxes but does reside with me after my father passed away from cancer. She is a stroke victim since 2007 and never has paid into the system as she has been a homemaker since 1963. She receives no income job when I read dependent I thought yes my mom is dependent on me for care etc.

Exhibit A (filed separately under seal) at 4. In fact, the defendant's mother <u>did</u> receive Social Security payments, which were deposited into an account at Woodlands Bank which was held in the name of D.S. and her deceased husband; the defendant wrote checks out of that account as

Power of Attorney. The defendant's representation in this regard was the opposite of "honest," a term nonetheless used by a supporter to describe the defendant. In the attached submission, the defendant made a dramatized complaint regarding financial aid, referencing her medical conditions and tax exempt forms, when in fact, as discussed above, the defendant misappropriated significant funds between 2012 and 2014. That fact is difficult to reconcile with her claims of poverty. This submission illustrates that, in addition to acting impermissibly (and unlawfully) with respect to her mother's funds, she capitalized on the fact she did not file tax returns to declare such income, all in an attempt to receive financial assistance for one of her children.

It is not disputed that the defendant has significant health issues. However, the fact that she has suffered from health concerns—and continues to do so—did not stop her from engaging in the conduct in this case. Likewise, those conditions do not excuse her conduct. In the submission to her daughter's school referenced above, the defendant attempted to capitalize on her medical issues, claiming that she was "medically fragile," and that the school's requests for information "caused extreme stress and medical issues!!!" The defendant's medical conditions do not permit her to provide false information to a school; they do not permit her to act unlawfully with respect to her taxes; and they should not serve to insulate her from serving a just sentence of incarceration. While her conditions may warrant a variance, a noncustodial sentence is not appropriate.

   3. *To Reflect the Seriousness of the Offense and to Promote Respect for the Law*

The sentence must also reflect the severity of the offense and promote respect for the law. The defendant's conduct was serious and demonstrates a lack of respect for the law. She

6

engaged in this conduct for a period of years. As such, it is critically necessary that a sentence of incarceration be imposed, with the intent of instilling respect for the law. A 12-month sentence would reflect societal disapprobation for the defendant's conduct and would be consistent with what society expects as punishment for such offenses, in light of the circumstances of this case.

4. *Deterrence*

The sentence imposed in this case should also serve the interests of both specific and general deterrence. Tax crimes are particularly hard to detect and prosecute, particularly as the tax system is based largely on the proposition that people must honestly self-report appropriate income, deductions, and other relevant information used to obtain their total tax (and amounts due, or applicable refunds). The defendant should receive a sentence that sends a strong message to other taxpayers—that failure to file tax returns will be punished seriously. The Guidelines recognize the special need for deterrence in criminal tax cases:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. § 2T1.1 (Introductory Commentary). In *United States v. Park*, 758 F.3d 193, 195 (2d Cir. 2014) (Per Curiam), the Second Circuit vacated a below-guidelines probationary sentence where the court relied upon its belief the government could not afford incarceration during a "government shut-down." In *Park*, the defendant diverted his business's cash receipts from the corporate bank account and filed false corporate tax returns and underpaid payroll taxes. *See id*.

7

The defendant had prior fraud convictions and the total tax loss was $133,601.  *Id*. at 196.  As the Second Circuit observed, "general deterrence occupies an especially important role in criminal tax offenses, as criminal tax prosecutions are relatively rare."  *Id*. at 201.  *See also United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) ("Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise.").

Were the defendant to receive a non-custodial sentence, it would have the opposite effect as that envisioned by the Sentencing Commission—emboldening those who commit tax offenses, and making the failure to file tax returns (and to declare income) a calculable personal decision.   Here, a sentence of 12 months of imprisonment would serve as a deterrent both to this defendant and to the public at large.

     5.  *Need for Just Punishment*

Here, a sentence of 12 months of imprisonment, while below the applicable Guidelines range, would constitute just punishment for the offenses.   At the same time, imposition of such a sentence would recognize the defendant's medical challenges.

### III. CONCLUSION

For the reasons set forth above, the Government submits that a sentence of 12 months would adequately serve the goals of sentencing to include the need for deterrence, to constitute just punishment, to reflect the severity of the offenses, and to promote respect for the law. Such a sentence would appropriately weigh the defendant's conduct, which caused serious financial harm over a period of years, with her medical needs.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

  /s/ *Jennifer R. Laraia*
JENNIFER R. LARAIA
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct29637
1000 Lafayette Boulevard, 10th Floor
Bridgeport, CT 06604
(203) 696-3000

### CERTIFICATE OF SERVICE

This is to certify that on February 12, 2021, a copy of the foregoing Government's Sentencing Memorandum was filed electronically, and is available to the parties through the Court's CM/ECF system.

  /s/ *Jennifer R. Laraia*
JENNIFER R. LARAIA
ASSISTANT UNITED STATES ATTORNEY